IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JAY LANCE,**

                Plaintiff,

     v.

**GREEN TREE SERVICING, LLC,**

                Defendant.

No. 3:15-cv-00387-MO

OPINION AND ORDER

**MOSMAN, J.**,

Plaintiff Jay Lance brought four claims against Defendant Green Tree Servicing, LLC, including claims for breach of contract, violations for Oregon's Unfair Trade Practices Act ("UTPA"), violations of the Garn-St. Germain Depository Institutions Act of 1982, and violations of the Real Estate Settlement Procedures Act ("RESPA"). Each party moved for partial summary judgment [13, 15]. On May 16, 2016, I held oral argument and issued a ruling from the bench, denying Plaintiff Lance's Motion for Partial Summary Judgment [15] in its entirety and granting in part Defendant Green Tree Servicing's Motion for Partial Summary Judgment [13]. I granted summary judgment in favor of Green Tree with respect to Lance's Garn-St. Germain Act claim, dismissing it in its entirety.[1] I also granted

---

[1] I determined at oral argument that the Garn-St. Germain Act did not expressly provide for a private cause of action upon which Lance could base his claim. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 667, 688 (1979)) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008) (holding that a statute must "either explicitly create a private right of action or implicitly contain one").

Green Tree's motion with respect to Lance's UTPA claim, limiting Lance's UTPA claim to be based on actions or events that occurred after March 10, 2014.[2]

At oral argument, Lance produced for my consideration a newly published law review article from the Pepperdine Law Review, Sarah Bolling Mancini and Alys Cohen, *Surviving the Borrower: Assumption, Modification, and Access to Mortgage Information After a Death or Divorce*, 43 Pepperdine Law Review 345 (2016) ("the article"). Lance claims this article provides the argument and authority to defeat Green Tree's summary judgment motion with regard to the remaining breach of contract and RESPA claims. I agreed to review the article and its cited authority and to take under advisement Green Tree's motion as it pertains to Lance's breach of contract and RESPA claims. I requested the parties to submit supplemental briefing regarding the relevance of and weight I should afford the article.

I have reviewed the article and the parties' supplemental briefing. While the article presents a coherent policy argument to invalidate some deed of trust clauses, neither the state nor federal legislature has prohibited the specific written lender approval clause present in this case. Therefore, I find the written lender approval clause is valid and enforceable. Accordingly, I GRANT Green Tree's Motion for partial Summary Judgment [13] with regards to Lance's breach of contract and RESPA claims.

## I.    BACKGROUND

In September 2008, Cleo Lance, Plaintiff Jay Lance's mother, obtained a loan from Plaza Home Mortgage, Inc. for approximately $154,000 secured by a trust deed on the property. The deed of trust

---

[2] At oral argument, I found that Lance cannot base his UTPA claim on actions or events that occurred more than one year after Lance filed his claim. *See* OR. REV. STAT. 646.638(6) ("Actions brought under this section must be commenced within one year after the discovery of the unlawful method, act or practice."); *McCullock v. Price Waterhouse LLP*, 157 Or. App. 237, 247-48, 971 P.2d 414 (1998) (citations omitted) ("The period of limitation begins to run when the plaintiff knows or should have known of the alleged misrepresentations."). Lance filed his claim on March 10, 2015.

included a requirement that in order for a third party to assume the loan, the lender must approve of the assumption in writing.

Eventually, the loan was assigned to Bank of America. In September 2010, Cleo Lance died. In November 2010, Jay Lance's brother informed Bank of America their mother had passed away and the family would be assuming the loan. In April 2011, Jay Lance's attorney recorded a warranty deed signed by Jay Lance and his siblings as joint trustees, naming Jay as grantee owner of the property.

In June 2013, Green Tree began servicing the loan and sent a letter to Cleo Lance in an effort to notify her that Green Tree was the new loan servicer. Jay Lance contacted Green Tree to inform Green Tree of his mother's death and to inquire about assuming loan obligations. A Green Tree representative told Lance that he needed a power of attorney to discuss his mother's account. Lance responded that he could not get a power of attorney because his mother was deceased. Over the coming months, Lance continued unsuccessfully to try to assume the loan obligations. Green Tree began to send loan statements addressed to Cleo Lance showing her account was delinquent.

In November 2013 and in response to the notices of delinquency, Lance sent a cashier's check to Green Tree for $2,573.19 for past due payments. Green Tree returned the check and responded that the funds were insufficient to bring the account current. Lance mailed another cashier's check for $5,234.43 which, Green Tree once again returned stating that the funds were not sufficient to cover the past-due amount. In December 2013, after receiving the second returned payment, Lance called Green Tree and spoke with a supervisor about the account. Lance alleges the supervisor told Lance that in order to assume the loan, he must submit a copy of Cleo Lance's death certificate, the last property tax statement on the house, the trust Certificate of Incumbency, and the Warranty Deed demonstrating Lance is grantee owner of the property. Lance submitted these requested documents to Green Tree.

Lance eventually spoke with another Green Tree supervisor, Charles Spence, to confirm receipt of the requested documents. Spence instructed Lance to wire transfer $6,284.63 as full payment to Green Tree so that Green Tree could reinstate the loan in good standing. On December 23, 2013, Lance transferred the $6,284.63 to Green Tree. Lance was unable to contact Spence to follow up and confirm receipt of payment. At the time the motions for summary judgment were filed, Lance was delinquent for payments dating from January 2014 through April 2016.

In February 2014, Lance contacted a Green Tree representative once again to take the steps necessary to assume the loan. In March 2014, Lance received a letter from Green Tree requesting the same documentation that he had previously sent to Green Tree as well as an authorization for a "surviving spouse." Because he was not a surviving spouse, Lance called Green Tree about the paperwork and was again told he must send in a power of attorney for Cleo Lance before Green Tree could discuss the account.

In October 2014, Lance received a letter from Quality Loan Service Corporation warning that Green Tree had referred the loan to Quality for foreclosure. In December 2014, Lance received a notice of foreclosure by Trustee's Sale from Quality Loan Service Corporation. Lance filed this suit to prevent that sale.

## II.    LEGAL STANDARD

The court shall grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Evidence must be viewed in the light most favorable to the non-moving

party, and all justifiable inferences must be drawn in the non-movant's favor. *Johnson v. Poway Unified School Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

"The movant has the burden of showing that there is no genuine issue of fact." *Anderson*, 477 U.S. at 256. "When the non-moving party has the burden at trial," as is the case here, "the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case." *Stanley v. Novartis Pharmaceuticals Corp.*, 11 F. Supp. 3d 987, 994 (C.D. Cal. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case." *Id.*

## III.    DISCUSSION

Currently before me is Green Tree's motion for partial summary judgment with respect to Lance's breach of contract and RESPA claims. Lance provides the Pepperdine Law Review article entitled "Surviving the Borrower" to support his argument that his breach of contract and RESPA claims should survive summary judgment. With respect to Lance's breach of contract claim, Lance concedes he has not received written approval of assumption by the lender as required by the terms of the property's deed of trust. However, Lance argues, in light of the arguments and authority set forth in the article, such a provision in the deed of trust requiring written lender approval before he can assume his deceased mother's mortgage is against public policy and is unenforceable. Therefore, Lance argues, he should be allowed to assume the position of a party to the contract without actually having been a party to the contract.

With respect to Lance's RESPA claim, Green Tree argues that Lance is not a "borrower" under RESPA and therefore lacks standing to assert a claim under RESPA. *See, e.g.*, *Stolz v. OneWest Bank*, 2012 WL 135424, at \*4-5 (D. Or. Jan. 13, 2012). However, Lance argues that even if he is not a borrower, the arguments set forth in the article establish he has assumed the position of the borrower and

it is contrary to public policy to require lender approval for an heir to assume his deceased mother's mortgage. The issue, therefore, is whether a provision in a deed of trust requiring lender approval in writing before a successor in interest to a deceased borrower can assume the loan is forbidden and void.

For the reasons explained in more detail below, I find that without an express prohibition from the state or federal legislature, deed of trust clauses requiring written lender approval before an heir can assume a deceased family member's mortgage are valid and enforceable. Accordingly, I find the clause requiring Lance to receive written approval from Green Tree before assuming his mother's mortgage is enforceable. Since the clause is enforceable against Lance and since he has not received written approval from Green Tree, he has not assumed the position of a party to the contract nor has he assumed the position of a "borrower" under RESPA. I therefore grant the remaining portions of Green Tree's Partial Motion for Summary Judgement and dismiss Lance's breach of contract and RESPA claims.

### A. Equitable Estoppel

As a threshold matter, Lance contends in his supplemental briefing that his breach of contract claim should survive because Green Tree should be equitably estopped from arguing that no contract exists between Lance and Green Tree. At oral argument, I noted equitable estoppel was a potential argument Lance could have made to defeat summary judgment on his breach of contract claim but it was not an argument he had ever made. I once again find Lance did not make this equitable estoppel argument and decline to entertain it at this late stage of the litigation.

In his supplemental brief, Lance contends he did raise an equitable estoppel argument in his Response to Green Tree's Motion for Partial Summary Judgment, even though he never actually used the term "estoppel" anywhere in his brief. On pages 5 and 6 of his Response to Green Tree's Motion for Partial Summary Judgment, Lance argued,

> Green Tree cannot claim that there was no assumption by plaintiff. The
> evidence submitted by plaintiff shows that defendant's representatives

> instructed plaintiff to send certain legal documents and a reinstatement
> payment of $6,284.63 to Mr. Charles Spence, and that thereby, Green Tree
> would recognize plaintiff as having assumed the original loan agreement
> with Cleo Lance. Plaintiff submitted his documents multiple times, and
> defendant accepted plaintiff's payment of $6,284.63 to reinstate the loan
> in December of 2013. (Ex. 1, Decl. of Jay Lance at para. 13-19, 23)

Pl. Resp. [21] at 5–6. Consistent with my statements at oral argument, I find that while the facts of equitable estoppel may be present, Lance failed to raise the argument in a timely manner. When taken out of context, the portion of Lance's Response quoted above could conceivably be construed as an argument for equitable estoppel; however, within the context of Lance's Response, Lance appears to have been advancing an implied-in-fact contract theory, not an equitable estoppel theory. *Id.* at 6 ("Both Bank of America and defendant's actions *evidence an implied contract* which benefitted defendant financially, and which defendant breached by failing to recognize plaintiff after he had performed the duties he was asked to fulfil by defendant.") (emphasis added). Raising an equitable estoppel argument now for what appears to be the first time is simply too late. *See Soto v. Castlerock Farming and Transport, Inc.*, 2013 WL 1222055 at *4 (E.D. Cal. March 25, 2013) ("Even if the court were inclined to find that equitable estoppel applied . . . . [t]his argument should have been raised in the briefing for the underlying summary judgment motion.") (citations omitted). Accordingly I find Lance did not make an equitable estoppel argument in his Response to Green Tree's Motion for Partial Summary Judgment and decline Lance's invitation to consider it now.

### B.  Validity of the Written Lender Approval Requirements

Lance argues deed of trust clauses requiring written lender approval before an heir of a deceased borrower can assume the loan are invalid as against public policy. This argument relies entirely on the Pepperdine Law Review article and the authorities the article cites. The authors of the article contend lenders must allow assumptions when the party who is trying to assume the mortgage is the immediate family member of the deceased mortgagor. While the authors' argument is well-reasoned and makes a

strong case of what the law *should be*, I decline to rule in this instance that the position articulated by the authors and adopted by Lance is what the law *actually is*.

The article extensively explores the common law history of mortgages and the legislative history of the Garn-St. Germain Act. *See* Mancini & Cohen, *Surviving the Borrower*, *supra*, at 370–81. Because understanding those histories is helpful to understanding the basis of the argument the authors make and Lance adopts, I will briefly summarize them here. Under the common law, contracts are generally freely assignable. *Id.* at 371 (citing *United States v. Doe*, 940 F.2d 199, 2014 (7th Cir. 1991)). Historically, contracts to pay mortgage obligations generally fell under this rule. *Id.* at 372 (citing *Solomon v. Copping*, 112 So. 2d 749, 751 (La. Ct. App. 1959)). Often in times of rising interest rates, existing homeowners would assign their mortgage contracts to the new homeowner and require the new homeowner to assume the mortgage obligations. *Id.* at 372–73. For a variety of reasons, lenders became wary of allowing new homeowners with whom they had no previous relationship assume mortgage contracts. *Id.* at 374-75. Eventually, in an effort to restrict a third party assuming the borrower's rights and responsibilities, lenders began to include due-on-sale clauses in mortgage contracts. These clauses provided that if the homeowner assigned the mortgage or transferred the property without the lender's consent, the mortgage came due. *Id.* at 375 (citing *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 460 (S.D. Tex. 2012)). Due on sale clauses give the lender the right to accelerate the mortgage loan and foreclose upon transfer of the rights and responsibilities of the borrower. *Id.*

State courts and legislatures across the country viewed due-on-sale clauses with suspicion and largely rejected the exercise of such clauses. *Id.* at 376 (citing *Wellenkamp v. Bank of Am.*, 582 P.2d 970, 974–77 (Cal. 1978). In 1982, however, Congress enacted the Garn-St. Germain Act, which preempted state laws forbidding the enforcement of due-on-sale clauses. *Id.* at 377; *see also* 12 U.S.C. § 1701j-3(b)(1) (2012). After the enactment of the Garn-St. Germain Act, as a general rule, a borrower

8 – OPINION AND ORDER

could not transfer a property subject to a mortgage without the lender's consent if that mortgage

contained a due-on-sale clause. Mancini & Cohen, *Surviving the Borrower*, *supra*, at 378 (citing 12

U.S.C. § 1701j-3(a)(1)). Congress did, however, create several exceptions to this general rule. Relevant

to this case is the exception involving transfers resulting from death, divorce, or shifting ownership

within a family on residential property with fewer than five units. *Id.* at 378-79 (citing 12 U.S.C. §

1701j-3(d)(3); 1701j-3(d)(5); 1701j-3(d)(6)).

The authors of the article suggest that in prohibiting the enforcement of due-on-sale clauses in

this excepted circumstance, Congress left intact the protected successor's common law right to assume

mortgage rights and obligations. *Id.* at 379. The authors' central thesis and the thrust of Lance's

argument is the following:

> Because the due-on-sale clause is the only mechanism a servicer has to
> block the assumption of the mortgage by the new homeowner, lenders
> *must allow assumptions that fall within one of these exceptions*, even if
> there is an otherwise valid due-on-sale clause in the mortgage. *Any
> provision requiring the lender's approval of an assumption is subject to
> these same restrictions in the Garn-St. Germain Act.*

*Id.* at 380 (emphasis added and citations omitted). In other words, the authors and Lance argue that since

the Garn-St. Germain Act plainly prohibits lenders from exercising due-on-sale clauses affecting would-

be assumers of mortgages in protected positions similar to that of Lance, any other clause that restricts

assumption—like the written lender approval clause at issue in this case—is subject to the same

restrictions. Since Lance, a transferee that received the property as a result of his mother's death, would

qualify under the Garn-St. Germain exception prohibiting due-on-sale clauses, he should similarly be

excepted from any other clauses attempting to restrain him from assuming the loan. Lance argues that if

he wishes to assume the mortgage, the lender cannot prevent him from doing so and must honor the

assumption following the policy considerations supposedly embodied by the Garn-St. Germain Act's

prohibition on due-on-sale clauses. *See id.* at 381. Lance argues any provision restraining him from

assuming his mother's mortgage should be void as against public policy. If the written lender approval clause is voided, Lance argues, he can assume the mortgage and defeat Green Tree's Motion for Summary Judgment with regard to his breach of contract and RESPA claims.

While it is undoubtedly frustrating for people in Lance's position to be subject to a written lender approval provision, the Garn-St. Germain Act only prohibits lenders from exercising due-on-sale clauses on heirs like Lance—the language of the Garn-St. Germain Act says nothing about written lender approval requirements. Lance is asking me to conclude that Congress's supposed motivation in passing the Garn-St. Germain Act was not only to prohibit due-on-sale clauses from being exercised on protected parties in Lance's position, but also to prohibit all other clauses that impede an heir like Lance from assuming a deceased relatives loan. The problem here is that the text of the Garn-St. Germain Act only addresses due-on-sale clauses—it says nothing of written lender approval clauses like the one at issue in this case. Lance wants me to expand the Garn-St. Germain Act to void contractual provisions that are not contemplated by the text of the Act.

This Court does not have the power to expand statutes—that power belongs to the legislative branches of state and federal government. If Congress sees fit to prohibit the exercise of written lender approval clauses against heirs like Lance, Congress need only amend the Garn-St. Germain Act or pass other legislation that makes that expression of public policy clear. Alternatively, it is presumably within the authority of the Oregon state legislature to pass legislation forbidding clauses that restrain heirs from assuming their deceased family member's mortgage. Until the legislative branches of the state or federal government take these steps, then lenders like Green Tree will continue to be able to take advantage of people in Lance's position.

## IV.    CONCLUSION

I find the written lender approval clause is valid and enforceable. Accordingly, I GRANT Green Tree's Motion for partial Summary Judgment [13] with regards to Lance's breach of contract and RESPA claims.


DATED this __6th__ day of July, 2016.


/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
Chief United States District Judge